UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
_____

In Re:

MARY ELLEN BARTELINI,                    Chapter 13
f/d/b/a DIRT ROAD CAFÉ,                   Case No.: 09-61399
f/d/b/a GIT R DONE CARRIERS,
a/k/a MARY ELLEN PECORARO,

                              *Debtor.*

_____

In Re:

DOUGLAS WILLIAM EARL, JR. and            Chapter 13
SUSAN DORENE EARL,                       Case No.: 09-61791

                              *Debtors.*

_____

In Re:

NELSON D. TANNER, JR. and                Chapter 13
JUDY E. TANNER,                          Case No.: 09-61895

                              *Debtors.*

_____

APPEARANCES:

HUMPLEBY LAW OFFICE, P.C.                 CRAIG C. HUMPLEBY, ESQ.
*Attorneys for Mary Ellen Bartelini,*
*f/d/b/a Dirt Road Café,*
*f/d/b/a Git R Done Carriers,*
*a/k/a Mary Ellen Pecoraro*
4306 East Genesee Street
Syracuse, New York 13214

PETER A. ORVILLE, P.C.                    PETER A. ORVILLE, ESQ.
*Attorneys for Douglas William Earl, Jr. and*
*Susan Dorene Earl*
30 Riverside Drive
Binghamton, New York 13905

2

THOMAS MILLER, ESQ.
*Attorney for Nelson D. Tanner, Jr. and*
*Judy E. Tanner*
49 Court Street
Binghamton, New York 13901

MARK W. SWIMELAR, ESQ.                    MAXSEN D. CHAMPION, ESQ., Of Counsel
*Chapter 13 Standing Trustee*
250 South Clinton Street
Suite 203
Syracuse, New York 13202

Honorable Diane Davis, United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

The above-captioned cases are before the Court by virtue of the objections to confirmation of

the debtors' respective Chapter 13 plans made pursuant to 11 U.S.C. § 1325(b)(1)(B) by Mark W.

Swimelar, Esq., Chapter 13 Trustee ("Trustee").[1]  The question raised by the Trustee is whether

Mary Ellen Bartelini, Douglas William Earl, Jr. and Susan Dorene Earl, and Nelson D. Tanner, Jr.

and Judy E. Tanner (collectively, "Debtors") have committed all of their "projected disposable

income" ("PDI") during the "applicable commitment period" ("ACP") under their respective plans

for the benefit of their unsecured creditors.  The narrower issue joining these three cases, however, is

whether Debtors, who rely in part or in whole on household Social Security disability benefits or

other Social Security income ("SSI") to make their plan payments, must contribute all of their SSI as

PDI to fund distributions to their unsecured creditors during the life of their respective Chapter 13

plans for purposes of § 1325(b)(1)(B).

As evidenced by post-BAPCPA case law, the question of how to define and calculate PDI

under § 1325(b) seems simple at first blush, but it evokes a plethora of complex answers that differ

---

[1] Unless otherwise indicated, all statutory references herein are to the United States Bankruptcy
Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005
("BAPCPA"), 11 U.S.C. §§ 101–1532 (2006) ("Bankruptcy Code").

significantly among the courts that have addressed this specific issue.  *See In re Austin*, 372 B.R. 668, 674 (Bankr. D. Vt. 2007) (noting that "[t]he post-BAPCPA definition of 'projected disposable income' . . . has been hotly debated, and published judicial opinions reflect a broad spectrum of perspectives"); *In re Rotunda*, 349 B.R. 324, 327 (Bankr. N.D.N.Y. 2006) ("[C]ourts have struggled with the issue of whether 'projected disposable income,' . . . less certain deductions, should be based on the debtor's average income for the six months prior to bankruptcy, . . . or the debtor's projected income based on their financial circumstances at the time of filing of their petition . . . ."); *In re Barfknecht*, 378 B.R. 154, 158 n.5 (Bankr. W.D. Tx. 2007) (referencing a July 2007 case law update presented by the Honorable Keith M. Lundin, U.S. Bankruptcy Judge, Middle District of Tennessee, at the National Association of Chapter 13 Trustee's Convention, wherein Judge Lundin counted at least seven different schools of thought on how to calculate PDI); *see also* Hon. Randolph J. Haines, *Chapter 11 May Resolve Some Chapter 13 Issues*, 2007 No. 8 Norton Bankruptcy Law Advisor 1 ("Courts are severely split on the interpretation and application of two terms that are fundamental to post-BAPCPA Chapter 13 plans: 'projected disposable income' and 'applicable commitment period.'").

When the question is reframed, its complexity is facially evident.  As stated by the Tenth Circuit Court of Appeals:

> [t]he issue to be resolved is whether the 'projected disposable income' referred to in § 1325(b)(1)(B) is calculated by mechanical application of the definitions of 'disposable income' and 'current monthly income' set forth in §§ 1325(b)(2) and 101(10A)(A)(i), respectively, or whether it is permissible to adjust the 'monthly disposable income' calculated on Form B22C to account for a debtor's actual ability to fund a plan as of the effective date of the plan.

*Hamilton v. Lanning (In re Lanning)*, 545 F.3d 1269, 1275–76 (10th Cir. BAP 2008), *cert. granted*,

77 U.S.L.W. 3677 (U.S. Feb. 22, 2010) (No. 08-998).[2]

Irrespective of which interpretation this Court deems to be correct, the Trustee's objections

must be denied because of the sacrosanct nature of SSI.  As discussed in greater detail *infra*, SSI is

statutorily excluded from CMI, and thus also from DI.  Because the Court's present inquiry begins

and ends with the income component of DI, under which the Court concludes that Debtors' cannot

be compelled to utilize their exempt SSI for payment of unsecured debt, the Trustee's narrowly

framed objections must be overruled in these particular cases.  This Court is simply without

discretion to alter BAPCPA's treatment of SSI regardless of how unfair the outcome may seem in

any particular case.  *See, e.g., In re Nance*, 371 B.R. 358, 366 (Bankr. S.D. Ill. 2007) (One of

Congress' goals in enacting BAPCPA was to eliminate judicial discretion and replace it with

specific statutory standards and formulas.).

---

[2] Due to BAPCPA's changes to § 1325(b), the so-called "means test" analysis set forth in § 707(b) now pervades the Chapter 13 confirmation process.  *See* 11 U.S.C. § 707(b) (2006) (the purpose of which is to determine whether a debtor's Chapter 7 case should be dismissed for abuse).  In order to determine a debtor's "disposable income" ("DI"), § 1325(b) requires a bifurcated examination of the debtor's income and expenses; if, under the income component, the debtor's "current monthly income" ("CMI"), as defined by § 101(10A), exceeds the median family income benchmark for households of the same size in the debtor's state, then the debtor's expenses are determined in accordance with § 707(b)(2)(A) and (B), the former of which in turn incorporates the National and Local Standards issued by the Internal Revenue Service ("IRS").  Form B22C, entitled "Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income Calculation," and re-designated under the Official Forms as Form 22C, is now required to be filed by individual Chapter 13 debtors pursuant to Federal Rule of Bankruptcy Procedure 1007-1(b)(6).  Form 22C tracks the BAPCPA amendments codified in § 1325(b) to determine DI and the ACP for debtors earning above the median family income for households of the same size in the same locality.  For debtors earning below the applicable median family income level, Form 22C only calculates the debtors' CMI.  Below-median debtors' expenses continue to be determined under the pre-BAPCPA guideline of what is reasonably necessary to be expended for the support and maintenance of the debtor and the debtor's dependents.  One reality of this approach for some above-median Chapter 13 debtors, as has been recognized in bankruptcy courts nationwide, is that above-median debtors may pay less than the amount that they can actually afford each month for the benefit of their unsecured creditors under the mechanical means test or Form 22C formula.

## JURISDICTION

The Court has core jurisdiction over the parties and subject matter of these contested matters pursuant to 28 U.S.C. §§ 1334, 157(a), (b)(1), and (b)(2)(L).

## FACTS

I.    *Mary Ellen Bartelini*[3]

Ms. Bartelini filed a voluntary Chapter 13 petition, which included the required Form B22C, Schedule F, entitled "Creditors Holding Unsecured Nonpriority Claims," Schedule I, entitled "Current Income of Individual Debtor(s)," and Schedule J, entitled "Current Expenditures of Individual Debtor(s)," on March 20, 2009.  Ms. Bartelini also filed her original Chapter 13 plan on that date.  Schedule F reports general unsecured debt in the aggregate amount of $121,881.00. Schedule I states, in part that: (1) Ms. Bartelini is married; (2) she is employed by New York State as a "Development Aid" and earns current monthly gross wages in the amount of $3,469.40; (3) her monthly payroll deductions include, but are not limited to, $341.77 for a child support obligation; (4) her net monthly take home pay totals $2,170.16; (5) her non-debtor spouse is disabled and receives SSI in the amount of $1,062.50, as well as $2,972.00 in veterans benefits; and (6) their combined average monthly income totals $6,204.66.  Schedule J reports average monthly expenses totaling $5,172.00, resulting in monthly net income totaling $1,032.66.

According to Ms. Bartelini's Form B22C, she is an above-median debtor whose ACP is sixty months.[4]  In comparison to Ms. Bartelini's Schedules I and J, pertinent information reported on her

---

[3] The facts of this case are drawn from the parties' stipulation filed with the Court on September 9, 2009, and the case docket.

[4] Unless a plan provides for payment in full of all allowed unsecured claims over a shorter period of time, the ACP for a below-median debtor is three years, while the ACP for an above-median debtor is five years.  *See* 11 U.S.C. § 1325(b)(4)(A) (2006).  In the cases *sub judice*, the ACP is not in dispute.

Form B22C includes: (1) Line 2 lists monthly gross wages totaling $3,464.57; (2) Line 9 lists monthly veterans benefits in the amount of $2,972.00; (3) Line 20 lists CMI in the amount of $6,436.57; (4) Line 58 lists the total of all deductions from income in the amount of $6,287.68; and (5) Line 59 lists monthly DI in the amount of $148.89. Accordingly, after subtracting the Form B22C DI amount of $148.89 from Ms. Bartelini's Schedule J monthly net income total of $1,032.66, Ms. Bartelini's Schedule J shows excess income equal to $882.77 when her actual household expenses and SSI are considered.

Ms. Bartelini filed an amended plan on May 29, 2009 (the "Bartelini Plan"), which proposes payments of $200.00 per month for a sixty-month term. The Bartelini Plan includes a distribution to general unsecured creditors of at least 7.22 percent. Ms. Bartelini's case was originally scheduled for confirmation to be heard on August 6, 2009. The Trustee filed his objection to confirmation of the Bartelini Plan on July 30, 2009, citing the large discrepancy between Ms. Bartelini's monthly net income reported on Schedule J, and her monthly DI arrived at under the means test and reported under Line 59 of her Form B22C. Confirmation was adjourned to October 1, 2009, and the parties were afforded an opportunity to submit memoranda of law. The Trustee filed his Memorandum of Law and Amended Memorandum of Law on September 23, 2009, and Ms. Bartelini filed a Memorandum of Law on October 1, 2009. The Court held the confirmation hearing on that date, and the matter was taken under advisement.

II.    *Douglas William Earl, Jr. and Susan Dorene Earl*

Douglas William Earl and Susan Dorene Earl filed a voluntary Chapter 13 petition, which included Form B22C, and Schedules F, I, and J, and Chapter 13 Plan ("Earl Plan") on June 29, 2009. Schedule F reports general unsecured debt in the aggregate amount of $38,660.03. Schedule I states, in part: (1) Mr. Earl has been employed as a laborer for the New York State Department of

Transportation ("DOT") since late 2005, and he currently earns monthly gross wages from his DOT position in the amount of $2,716.70, together with monthly income from a part-time job in the amount of $503.33; (2) Mr. Earl also receives monthly retirement benefits in the amount of $81.51; (3) Ms. Earl is unemployed and disabled, and she receives SSI in the amount of $950.00 per month, together with long term disability payments in the amount of $100.00 per month; and (4) the Earls' combined average monthly income totals $3,515.38.  Schedule J lists average monthly expenses totaling $2,575.00, thus, Schedule J reports that the Earls' monthly net income is $940.38.  By comparison, the  Earls' Form B22C at Line 20 lists their CMI as $3,581.90, resulting in annualized CMI under Line 21 in the amount of $42,982.60, which is significantly less than the applicable median family income for a two-person household in New York State.  Accordingly, the Earls are below-median debtors and their DI is calculated by reference to their CMI less Schedule J actual expenses,[5] leaving a negative DI once SSI and disability benefits are backed out of the CMI equation.

The Earl Plan proposes payments of $150.00 per month for a sixty-month term, notwithstanding that the Earls' ACP is thirty-six months, which will result in a distribution to general unsecured creditors of at least 5.00 percent.  The Trustee filed his objection to confirmation of the Earl Plan on August 27, 2009, on grounds that the Earls improperly failed to include their household SSI as DI, and the Earls, at the time, were one month in arrears, such that the Trustee questioned their ability to make future plan payments.  The Earls' case was originally scheduled for confirmation to be heard on September 3, 2009.  The Trustee filed his objection to confirmation of the Earl Plan on August 27, 2009, citing two statutory bases: (1) failure to satisfy § 1325(b)(1)(B) because there is a large discrepancy between the Earls' monthly net income reported on Schedule J

---

[5] *See supra* text accompanying note 2.

8

and their proposed monthly plan payment; and (2) lack of feasibility under § 1325(a)(6) due to the Earls' failure to timely remit one plan payment in the amount of $150.00. Confirmation was adjourned to October 1, 2009, and the parties were afforded an opportunity to submit memoranda of law on or before October 1, 2009. The Trustee filed his Memorandum of Law and Amended Memorandum of Law on September 23, 2009, and the Earls filed a Memorandum of Law on September 29, 2009. Without further hearing, the matter was taken under advisement as of October 1, 2009.[6]

III.    *Nelson D. Tanner, Jr. and Judy E. Tanner*

Nelson D. Tanner, Jr. and Judy E. Tanner filed a voluntary Chapter 13 petition, which included Form B22C, and Schedules F, I, and J, and Chapter 13 Plan ("Tanner Plan") on July 8, 2009. Schedule F reports general unsecured debt in the aggregate amount of $16,370.62. Schedule I states, in part: (1) Mr. Tanner has been employed as a truck driver for the past sixteen years in private industry, and he currently earns monthly gross wages in the amount of $3,835.39; (2) Ms. Tanner is retired, and she receives SSI in the amount of $794.00 per month, together with other pension or retirement income in the amount of $164.00 per month; and (3) the Tanners' combined average monthly income totals $3,978.81. Schedule J lists average monthly expenses totaling $3,013.90, leaving the Tanners with monthly net income in the amount of $964.91. By comparison, the Tanners' Form B22C at Line 20 lists their CMI as $3,494.35, resulting in annualized CMI under

---

[6] Review of the record in this case shows that on January 19, 2010, the Earls filed a purported amended Chapter 13 plan dated October 23, 2009. The Court has compared the two plans and the only discernible difference between them seems to be with respect to the valuation of Wells Fargo's secured claim. The Earl Plan lists at Paragraph 3 the scheduled debt in the amount of $964.00, the value of the collateral for such debt as $50.00, and the interest rate at 6 percent. The amended plan, which does not appear to have been noticed, lists at Paragraph 3 the same debt, but with a value of the collateral for such debt as $775.00, and an interest rate of 0 percent. Fortunately, the amended plan does not impact the Court's resolution of the questions presented in the matters *sub judice*.

Line 21 in the amount of $41,932.20, which is significantly less than the applicable median family income for a two-person household in New York State and, thus, the Tanners are also below-median debtors. The Tanners' DI is therefore calculated by subtracting their Schedule J expenses from their CMI,[7] leaving DI in the amount of $170.91.

The Tanner Plan proposes payments of $236.56 per month for a sixty-month term, notwithstanding that the Tanners' ACP is thirty-six months, which will result in a distribution to general unsecured creditors of at least 1 percent. The Tanners' case was originally scheduled for confirmation to be heard on September 3, 2009. The Trustee filed his objection to confirmation of the Tanner Plan pursuant to § 1325(b)(1)(B) on August 27, 2009, on the basis that the Tanners improperly failed to include their household SSI as PDI. According to the Trustee's calculations, the Tanners' monthly plan payments should be either $964.00 for thirty-six months, or $579.00 for sixty months. Confirmation was adjourned to October 1, 2009, and the parties were afforded an opportunity to submit memoranda of law on or before October 1, 2009. The Trustee filed his Memorandum of Law and Amended Memorandum of Law on September 23, 2009, and the Tanners filed a Memorandum of Law on September 28, 2009. Together with the Bartelini and Earl cases, the matter was taken under advisement as of October 1, 2010.

## ARGUMENTS OF THE PARTIES

I.    *The Trustee's Position*

The Trustee contends that Debtors should be required to fund their monthly net income, as reported on Schedule J, for the benefit of unsecured creditors pursuant to 11 U.S.C. § 1325(b)(1)(B). Relying upon the holding of *In re Timothy*, 2009 Bankr. LEXIS 1198 (Bankr. D. Utah, May 12, 2009), the Trustee takes this position notwithstanding that both Ms. Bartelini's and the Earls'

---

[7] *See supra* text accompanying note 2.

monthly net income reported on Schedule J is derived wholly from SSI, and the Tanners' monthly net income reported on Schedule J is derived in large part from SSI.[8] Although not expressly stated, given his reliance on *Timothy*, the Trustee's argument is that in order for the Debtors to respectively propose a confirmable plan, all of their otherwise exempt SSI to be received during the life of their plan must be included and must be applied to make payments under their plan to general unsecured creditors.[9]

In support of his position, the Trustee advances several familiar DI arguments, including that the form B22C should be viewed as a "first look" into a debtor's PDI, and thus that PDI should be

---

[8] As set forth in the Facts above, Ms. Bartelini's spouse's monthly SSI exceeds her net monthly income by $29.84, and the Earls' SSI exceeds their net monthly income by $9.62, but the Tanners' Schedule J net monthly income exceeds their SSI by $170.91.

[9] *Timothy* involved above-median joint debtors who had negative DI under the means test analysis and Form 22C, but whose Schedules I and J showed sufficient monthly net income to fund a Chapter 13 plan that would pay all of their secured debt proposed to be paid through the plan, all Chapter 13 administrative expenses, all attorneys' fees to be paid through the plan, and provide a return to their unsecured creditors equal to or greater than the amount that the unsecured creditors would have received in a Chapter 7 case. *In re Timothy*, 2009 Bankr. LEXIS 1198, at *2. The Honorable R. Kimball Mosier held that the debtors' must pay their SSI, in full, for sixty months in order to achieve confirmation.

Here, the Trustee also brought to the Court's attention during oral argument the October 6, 2009 oral bench ruling of the Honorable Margaret Cangilos-Ruiz, U.S. Bankruptcy Judge for the Northern District of New York, Syracuse Division, in the Chapter 13 case of Charles C. Harrington, Case No. 09-30398, wherein Judge Cangilos-Ruiz adopted the holding of *In re Timothy*. Based upon the Court's review of the transcript submitted by the Trustee, which was not filed in the dockets of the cases *sub judice*, Judge Cangilos-Ruiz reasoned that:

> While the definition of current monthly income precludes the use of social security income for the purposes of calculating the applicable commitment period and for above-the-median debtor's monthly disposable income, if debtors choose to use Social Security income as disposable income to propose a plan, the Social Security income shall be included in the projected disposable income analysis of [11 U.S.C. §] 1325(b)(1)(B).

For the reasons that follow, this Court respectfully disagrees with and rejects both the reasoning and holdings of *Timothy* and *Harrington*.

measured by a debtor's financial condition during the ACP as shown on Schedules I and J.[10]  The

Trustee further argues that allowing Debtors to retain any and all SSI throughout the life of their

Chapter 13 cases creates administrative problems and runs afoul of the congressional intent behind

the passage of BAPCPA.  The "administrative problems" articulated by the Trustee include, but are

not limited to: (1) absent the inclusion of SSI, there exists no basis through which the Trustee can

determine the appropriate Chapter 13 plan payment for every below-median debtor who receives SSI

and, more specifically, failing to include SSI for plan payment determination purposes creates an

absurd result where the debtors are able to propose any arbitrary plan payment they desire to the

detriment of their unsecured creditors; and (2) if SSI is excluded from the calculation of PDI, the

Trustee must object to any petition filed by an individual whose sole source of income or Chapter 13

plan funding is SSI because that individual lacks regular income to satisfy the eligibility

requirements to be a Chapter 13 debtor.[11]  From a policy standpoint, the Trustee asserts two main

arguments.  First, he contends that allowing debtors to retain SSI throughout the life of their Chapter

13 cases is contrary to the spirit of BAPCPA, which was enacted with the intent of requiring debtors

---

[10] This argument necessarily adopts the holdings by those courts that find that DI and PDI are separate and distinct concepts, and that Congress must have intended something other than annualized DI when it retained the pre-BAPCPA PDI language in §1325(b)(1)(B).  *See* Discussion *infra*, pp. 14–15.

[11] Section 109(e) dictates that "only an individual with regular income may be a Chapter 13 debtor." 11 U.S.C. § 109(e) (2006).  "Regular income" is income that is "sufficiently stable and regular to enable such individual to make payments under a plan under Chapter 13."  *Id.* § 101(30).  "The benchmark for determining whether an individual has regular income for purposes of section 101(30) . . . is not the type or source of income, but 'its stability and regularity.'"  *In re Antoine*, 208 B.R. 17, 20 (Bankr. E.D.N.Y. 1997) (quoting *In re Fischel*, 103 B.R. 44, 48 (Bankr. N.D.N.Y. 1989)).  "It is incumbent upon the debtor to sufficiently demonstrate an ability to fund the plan from sources which are stable and regular," *In re Sassower*, 76 B.R. 957, 960–61 (Bankr. S.D.N.Y. 1987) (quoting *In re Tucker*, 34 B.R. 257, 262 (Bankr. W.D. Okl. 1983)), and courts historically have considered various sources of income, including, but not limited to, investments, pensions, SSI, unemployment, and welfare, *id.* (citing cases).

to pay the greatest amount within their capabilities.  Second, he argues that the CMI test added to the

Bankruptcy Code under BAPCPA is different than and functions independently of the PDI test, and

both tests must be satisfied for above and below-median debtors.[12]

II.    *Ms. Bartelini's Response*

Ms. Bartelini argues that SSI is exempt from the form B22C calculations and, therefore, it is

not treated as DI subject to the reach of creditors.  She urges the Court to adopt the holdings of prior

bankruptcy judges, including the undersigned's predecessor, Retired Chief Judge Stephen D.

Gerling, in finding that Congress specifically excluded SSI from the definition of CMI and DI, thus

rendering SSI outside the scope of PDI.  *In re Rotunda*, 349 B.R. 324; *In re Barfknecht*, 378 B.R.

154; *In re Upton*, 363 B.R. 528 (Bankr. S.D. Ohio 2007); *In re Devilliers*, 358 B.R. 849 (Bankr. E.D.

La. 2007); *In re Ward*, 359 B.R. 741 (Bankr. W.D. Mo. 2007).  In addition, in support of Ms.

Bartelini's argument that the Court cannot compel her to use excludable income to fund a Chapter

13 plan, she cites *In re Wilson*, 397 B.R. 299, 320 (Bankr. M.D. N.C. 2008), which held that SSI

payable to an above-median debtor's non-filing spouse should not be included in the debtor's

calculation of PDI.  Finally, Ms. Bartelini contends that the Trustee's position and reliance upon the

_____

[12] The Trustee contends in his Amended Memorandum of Law that CMI is based on a debtor's pre-petition income, while PDI is based on a debtor's estimated future, post-petition income.  The Trustee suggests that other Bankruptcy Code sections support this future-oriented interpretation of 11 U.S.C. § 1325(b)(1)(B).  Specifically, the Trustee points first to the Bankruptcy Code's requirement that a debtor disclose at the time of filing any anticipated increase in income over a twelve-month period following the filing date, *see id.* § 521(a)(1)(B)(vi), and he suggests that it is reasonable to infer in the absence of any legislative history that anticipated additional income after the filing of the petition must be accounted for and provided for in the plan.  In addition, the Trustee emphasizes the Bankruptcy Code's requirement that debtors, post-confirmation, annually provide copies of their tax returns and amended statements of income and expenditures, if requested, *see id.* § 521(f)(4)(B), leading the Trustee to conclude that if Congress intended for PDI to be limited to a static, pre-petition calculation of CMI less expenses, these provisions allowing for a review of debtors' post-petition financial circumstances would be rendered meaningless.  Since the Court has determined that the broader issue of PDI is not before it, the Court will not discuss PDI, nor will it address § 1329 as it applies to a post-confirmation change in circumstances.

holding in *Timothy* are fundamentally flawed because the Trustee and the court in *Timothy* fail to consider the language and weight of Section 407(a) of the Social Security Act, which provides that "[t]he right of any person to any future payment under [the Social Security Act] shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under [the Social Security Act] shall be subject to . . . the operation of any bankruptcy or insolvency law." 42 U.S.C. § 407(a) (2006).  Ms. Bartelini argues that under the provisions of both the Social Security Act and the Bankruptcy Code, SSI is not property of the estate and her husband can therefore choose to contribute none, some, or all of his SSI to make payments under the Bartelini Plan.

III.     *The Tanners' Response*

The Tanners' argument is succinct: the core question is what constitutes DI, and monies received as a benefit of Social Security are statutorily excluded from CMI and hence from DI, irrespective of what adjective may precede the latter term.

IV.     *The Earls' Response*

The Earls' arguments largely mirror those of Ms. Bartelini.  They too contend that Congress placed SSI beyond the reach of creditors when it enacted BAPCPA.  The Earls also question the Trustee's reliance on *Timothy*, and aver that the court's holding in *Timothy* is flawed because the court erroneously relied upon pre-BAPCPA case law that no longer has precedential value.

Moreover, in response to the Trustee's argument that he would be unable to determine an appropriate plan payment for below-median debtors who receive SSI, the Earls contend that Chapter 13 plan payments may be easily ascertained on a case-by-case basis because they must be enough to cover secured debt being paid through the plan, administrative expenses, attorneys' fees, and the proper amount to unsecured creditors in order to satisfy the best interest of creditors test codified in

14

§ 1325(a)(4), no more, no less.

Finally, the Earls argue that there is nothing in the Bankruptcy Code that precludes Chapter 13 debtors from voluntarily devoting a portion of their SSI to a Chapter 13 plan for purposes of satisfying the best interest of creditors test or that prevents the Court from considering that income when evaluating plan feasibility.

## DISCUSSION

Section 1325(b) provides in pertinent part:

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

. . . .

(B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1)(B) (2006).  It has long been the case that a plan that satisfies all other § 1325 confirmation standards, which include, but are not limited to, proposal of the plan in good faith, *see id.* § 1325(a)(3), best interest of creditors, *see id.* § 1325(a)(4), and feasibility, *see id.* § 1325(a)(6), nevertheless may not be confirmed over the objection of a trustee or the holder of an allowed unsecured claim unless either the objecting creditor is being paid in full or all of the debtor's PDI is committed to the plan for the requisite period.  *See id.* § 1325(b)(1)(B) (1984) (amended 2005).  PDI is not itself a defined term under BAPCPA, but its component term, DI, is statutorily defined.  *See id.* § 1325(b)(2) ("'disposable income' means current monthly income received by the debtor . . . less amounts reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor.").

Section 1325(b) has, since its inception, contained a definition of DI, but that definition was significantly revised by Congress in 2005 by substitution of the newly defined term CMI in place of "income which is received by the debtor." The calculation of DI or PDI now begins with CMI. *In re Devilliers*, 358 B.R. at 865, n.25. Current monthly income is defined under BAPCPA as:

> (A) . . . the average monthly income from all sources that the debtor receives (or in a joint case that the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on—
>> (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii) [Form 22C]; or
>> (ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and
> (B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), *but excludes benefits received under the Social Security Act*, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism . . . or domestic terrorism . . . on account of their status as victims of such terrorism.

11 U.S.C. § 101(10A) (2006) (emphasis added).

The apparent friction between the newly created definition of CMI, which is based on the debtor's historical income, and the retention of the word "projected" in § 1325(b)(1)(B), which seemingly implicates the debtor's future income, has proven difficult for practitioners and the courts to reconcile. *Compare, e.g., In re Green*, 378 B.R. 30, 39 (Bankr. N.D.N.Y. 2007) ("'disposable income' and 'projected disposable income' are interrelated and are based on historical numbers as mandated in § 1325(b)"); *In re Austin*, 372 B.R. at 677 ("[T]his Court joins the numerous bankruptcy courts that have held that the plain language of the statute compels the conclusion that 'projected disposable income' means 'disposable income'—calculated using the formula set forth in § 1325(b)(2) and—'projected' over the debtor's applicable commitment period, without exceptions,

presumptions, or caveats of any kind . . . ."), *and In re Alexander*, 344 B.R. 742, 749 (Bankr. E.D.N.C. 2006) ("What is now considered 'disposable' is based upon historical data . . . . [I]n order to arrive at 'projected disposable income,' one simply takes the calculation mandated by § 1325(b)(2) and does the math."); *with, e.g., In re Kibbe*, 342 B.R. 411, 414 (D.N.H. 2006) (Recognizing that the term 'projected disposable income' is forward-looking, the court agreed with the conclusion of *Hardacre*.) (citation omitted); *In re Jass*, 340 B.R. 411, 415–16 (Bankr. D. Utah 2006) ("Form B22C will always be the starting point for the Court's inquiry into whether the debtor is complying with . . . § 1325(b)(1)(B). The Court will presume that the number resulting from Form B22C is the debtor's 'projected disposable income' unless the debtor can show that there has been a substantial change in circumstances such that the numbers contained in Form B22C are not commensurate with a fair projection of the debtor's budget in the future." ); *and In re Hardacre*, 338 B.R. 718, 722 (Bankr. N.D. Tex. 2006) ("The court believes that the term 'projected disposable income' must be based upon the debtor's anticipated income during the term of the plan, not merely an average of [the debtor's] prepetition income.").

The Court, however, need not decide today whether it agrees with the first line of cases favoring a mechanical application of § 1325(b)(2), or the second line of cases favoring a forward-looking, so-called "starting point" approach to determine a debtor's PDI for purposes of overcoming an objection by the Chapter 13 trustee or a creditor brought pursuant to § 1325(b)(1)(B). The Court agrees with the arguments raised by counsel appearing in the matters *sub judice*, namely that the Trustee's focus and objections are misguided by the incorrect inquiry. The relevant question given the Debtors' circumstances is not how to define "projected" for purposes of calculating their PDI, but rather whether SSI is ever to be included as DI subject to the reach of unsecured creditors in the

wake of BAPCPA's amendments.  The answer, quite simply, is no.

Admittedly, much of the text of BAPCPA fails to demonstrate the "clarity of linguistic expression" that should accompany all pieces of legislation.  *See* The Honorable Thomas F. Waldron and Neil M. Berman, *Principled Principles of Statutory Interpretation: A Judicial Perspective After Two Years of BAPCPA*, 81 Am. Bankr. L.J. 195, 197 (2007).  Congress, however, in drafting the provisions of BAPCPA that relate to the treatment of SSI, provided a clear directive.  This is one instance where the text of BAPCPA "says what it means and means what is says," thus rendering judicial inquiry complete upon a plain-reading of the statute.  *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992) (citing *United States v. Ron Pair Enters, Inc.*, 489 U.S. 235, 242–42 (1989); *United States v. Goldenberg*, 168 U.S. 95, 102–03 (1897); *Oneale v. Thornton*, 10 U.S. 53, 68 (1810)).

While courts cannot agree on the meaning or calculation of PDI, courts fundamentally agree that the determination of DI and, by extrapolation, PDI necessarily include both an income component and an expense component, and specific direction is provided in the text of BAPCPA for the former irrespective of the debtor's median income.  Given § 101(10A)'s explicit exclusion of SSI, debtors cannot be compelled to include those benefits in the computation of their DI and therewith their PDI.  *See In re Upton*, 363 B.R. at 535 (collecting cases); *accord In re Devilliers*, 358 B.R. at 865 ("Congress, in plain and unambiguous language, specifically excluded Social Security benefits from current monthly income.  The result is that they are also excluded in calculating disposable income.").

Notably, in *Upton*, the Honorable C. Kathryn Preston adopted what the court described as a "hybrid approach."  Even where the court found that it could use Schedules I and J to determine

PDI, the court recognized and agreed that "consideration of benefits received under the Social Security Act is inappropriate for determining 'projected disposable income.'" *Id.* at 534–35.

Similarly, as noted by the Honorable Leif M. Clark in *Barfknecht*, even though the court in *Hardacre* concluded that the word "projected" requires courts to consider forward-looking figures and income that the debtor reasonably expects to receive during the term of the plan, the court could not (and should not) ignore the definition of CMI. *In re Barfknecht*, 378 B.R. at 161. In calculating the income component of the DI test, the Court must therefore look to § 101(10A) "inasmuch as it describes the sources of revenue that constitute income, as well as those that do not." *Id.* (citing *Hardacre*, 338 B.R. at 723). Judge Clark deduced from the language of the *Hardacre* decision that "[e]ven *Hardacre* would agree that, insofar as what does and does not constitute 'income' for purposes of computing 'projected disposable income,' a court must be bound by the clear [statutory] directive . . . that current monthly income explicitly *excludes* benefits the debtor receives under the Social Security Act." *Id.*

While legislative history may be scarce with respect to BAPCPA generally, and § 1325(b) specifically, the Court finds overwhelming support for Congress' exclusion of SSI from monies required to be funded into a Chapter 13 plan for repayment of unsecured creditors in other pre-BAPCPA bankruptcy Code provisions and case law, non-bankruptcy law, and public policy. Like the Court in *Timothy*, this Court acknowledges that "courts have consistently included social security income in the calculation of 'projected disposable income.'" *In re Timothy*, 2009 Bankr. LEXIS 1198, at *17 (citing cases); *see also In re Devilliers*, 358 B.R. at 866 ("'Despite federal exemption [from garnishment or seizure], some bankruptcy courts held that social security income was to be included in the calculation of 'disposable income.'") (citing *In re Hagel*, 184 B.R. 793 (B.A.P. 9th

Cir. 1995)).  It is important to also acknowledge, however, that while bankruptcy courts pre-

BAPCPA could consider the same, failure of the debtor to commit SSI did not, and, in this Court's

opinion, still does not, provide a basis for requiring a person with regular SSI to proceed under

Chapter 13 rather than under Chapter 7 on the ground that Chapter 7 would constitute an abuse of

the bankruptcy system.  *See* Daniel L. Skoler, *The Status and Protection of Social Security Benefits*

*in Bankruptcy Cases*, 67 Am. Bankr. L.J. 585, 589 (1993).

Social Security benefits traditionally have been, "for the most part, well insulated from the

reach of creditors in bankruptcy cases." *Id.* at 587.  It appears without question that Congress,

through BAPCPA, legislatively recognized "the critical role of Social Security benefits as an

ultimate safety net for older and disabled Americans" and it acted in accordance with ingrained

public policy that "has long sought to shelter those benefits from creditors, even when circumstances

thrust beneficiaries into bankruptcy, whether on a voluntary or involuntary basis." *Id.* at 586.  As

succinctly stated by the Honorable Elizabeth W. Magner in *Devilliers*:

> Congress is presumed to know the effect of its acts.  For above the means test
> debtors, social security income may reach $24,636.00 for individuals and $49,272.00
> for married couples.  Unlike and unknown or unanticipated change in income, social
> security benefits are both predictable and certain.  It appears that Congress, through
> BAPCPA, effected a policy decision regardless of income level, a debtor's social
> security benefits would be protected from creditor interests.  The rationale for this
> treatment, lies in the exempt nature of the benefits themselves.

*In re Devilliers*, 358 B.R. at 865–66 (internal citation omitted).

Having now determined, in accordance with other bankruptcy courts that have decided the

issue, that SSI is afforded sacrosanct treatment under BAPCPA, the Court must now turn to the

Trustee's arguments that SSI is an all or nothing proposition, and that it may never be included as

regular income if it is to be excluded in the DI and, ultimately, the PDI inquiries.  Preliminarily, the

Court believes it is fair to say, especially in this period of economic downturn, that SSI is perhaps more "regular" and stable than other sources of income or forms of compensation.  *See Pellegrino v. Boyajian (In re Pellegrino)*, 423 B.R. 586, 590 (B.A.P. 1st Cir. 2010) ("[T]he test for regular income is not the type or source of income, but rather its regularity and stability.") (citing *In re Baird*, 228 B.R. 324, 327–28 (Bankr. M.D. Fla. 1999); *In re Murphy*, 226 B.R. 601, 604 (Bankr. M.D. Tenn. 1998)) (internal quotation marks omitted).

Inasmuch as this Court agrees with the observations of Judge Preston in *Upton*, the Court must reject the Trustee's arguments that seemingly characterize SSI as an all or nothing proposition as being without merit.  As Judge Preston aptly observed,

> [e]xcluding SSI from [the "projected disposable income"] analysis . . . does not necessarily preclude its consideration in determining whether a plan is feasible . . . . Thus, if a debtors' Schedules I and J indicate the net monthly income after excluding any SSI is less than the proposed plan payment, the SSI may still be considered by the Court . . . to overcome the appearance that the plan is not feasible.

*In re Upton*, 363 B.R. at 535 n.6.  Further, this Court also recognizes, as did Judge Preston, that a debtor's failure to commit SSI for purposes of repaying the maximum amount to creditors may be considered as one of many factors under a totality of the circumstances inquiry to determine good faith.  *See* 11 U.S.C. § 1325(a)(3).  While some courts have opined that the express exclusion of SSI eliminates the elements of debtor's income and surplus funds from the good faith analysis, others have considered such factors in the determination of good faith.  Neither issue is before the Court by virtue of the Trustee's objections here, so the Court will leave the issues of the interplay between SSI and good faith or feasibility for another day.

## CONCLUSION

For the foregoing reasons, the Court must overrule the Trustee's objections to the Bartelini,

21

Earl, and Tanner Plans under § 1325(b)(1)(B).  The Debtors have, in accordance with the statutory

mandate, committed all statutorily defined DI and, thus, all PDI, for payment of their unsecured

creditors.  In light of the BAPCPA amendments, it is settled law that, for individuals seeking

bankruptcy relief, SSI enjoys complete protection from the reach of unsecured creditors.

Based on the foregoing, it is hereby

ORDERED, that the Chapter 13 Trustee's objections to confirmation of the Bartelini, Earl,

and Tanner Plans are hereby overruled; and it is further

ORDERED, that Ms. Bartelini's case is restored to the Court's confirmation calendar

scheduled to be held on June 8, 2010, at 1:00 p.m. in Binghamton, New York, in order to ensure that

her Chapter 13 case is otherwise administratively upright and presently confirmable; and it is further

ORDERED, that the Earls' case is restored to the Court's confirmation calendar scheduled to

be held on June 8, 2010, at 1:00 p.m. in Binghamton, New York, in order to ensure that their Chapter

13 case is otherwise administratively upright and presently confirmable; and it is further

ORDERED, that the Tanners' case is restored to the Court's confirmation calendar scheduled

to be held on June 8, 2010, at 1:00 p.m. in Binghamton, New York, in order to ensure that their

Chapter 13 case is otherwise administratively upright and presently confirmable.

IT IS SO ORDERED.

Dated at Utica, New York
this 2nd day of June 2010

/s/ Diane Davis
DIANE DAVIS
United States Bankruptcy Judge